Lewis & Dalin, Inc. v. Commissioner.
Lewis & Dalin, Inc. v. Commissioner
Docket No. 21604.
United States Tax Court
1949 Tax Ct. Memo LEXIS 2; 8 T.C.M. (CCH) 1084; T.C.M. (RIA) 49293; December 28, 1949
*2 Hugh L. Barzee, Esq., 515 Pacific Bldg., Portland 4, Ore., for the petitioner. W. E. Koken, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The Commissioner determined a deficiency in income taxes for the taxable year ended December 31, 1943, in the amount of $3,578.54. The only issue raised in this proceeding is the reasonableness of the deductions claimed by the petitioner in 1945 as compensation paid in that year to its two principal officers, which amount is determinative of the petitioner's net loss carry-back from 1945 to 1943. At the hearing, oral testimony and exhibits were offered and a stipulation of facts was filed by the parties. [The Facts] The petitioner, an Oregon corporation with its principal office at 622 Pittock Block, Portland, Oregon, was organized in 1929 and since that time has been engaged in the wholesale lumber business, purchasing lumber from manufacturers on its own account for resale to customers. Its books are kept and its Federal tax returns are filed on an accrual and calendar year basis. Petitioner's returns for the year 1943 were filed with the collector of internal revenue for the district of Oregon. *3 With the exception of one qualifying share, all of the petitioner's outstanding capital stock, consisting of 100 shares of common stock of a par value of $10,000, was held during the year 1945 by William G. Dalin, president, and William R. Fifer, vice-president, and their respective wives. During the years 1936 to 1944, inclusive, the approximate amount of petitioner's gross sales, net income before deduction of compensation paid its two principal officers, taxable income reported, and the total amount allowed or agreed upon as compensation for the services of its officers were as follows: Compen-
Net income
sation
reported
Compen-
allowed or
before
sation
agreed
deducting
claimed for
upon for
compen-
services
Petitioner's
services of
sation of
of Dalin
net taxable
Dalin and
Gross Sales
Dalin and
and Fifer
income per
Fifer
Year
Reported
Fifer
(1/2 to each)
return
(1/2 to each)
1936
$ 768,800
$22,200
$10,200
$10,200
$10,200
1937
1,076,400
20,500
10,200
8,500
10,200
1938
478,300
26,200
12,000
12,400
12,000
1939
1,155,500
40,100
12,000
26,300
12,000
1940
1,201,500
55,200
24,000
30,300
24,000 *
1941
2,299,400
99,400
40,000
59,400
34,000 *
1942
2,616,300
98,500
46,000
52,500
37,600 *
1943
1,959,500
67,700
46,000
21,700
37,600 *
1944
1,220,800
36,200
34,000
2,200
34,000 *
*4 In its 1945 income and declared value excess profits tax return, petitioner reported sales of $782,918.26, gross income of $58,642.99, salaries to its two principal officers totaling $34,000, and a net loss for the year of $12,604.18. A refund of income tax for 1943 in the amount of $3,671.45 was claimed by petitioner and refunded by the Commissioner (prior to the issuance of the deficiency letter herein), based upon petitioner's application on Form 1139 for a "tentative carry-back adjustment" dated March 14, 1946, to carry the loss for 1945 of $12,604.18 back to the year 1943. The deduction of $34,000 claimed by the petitioner in its 1945 return as compensation paid to its two principal officers consisted of a salary of $17,000 for each officer. In the notice of deficiency, respondent allowed $24,000 as a deduction for such compensation, or $12,000 for each officer, thereby reducing petitioner's net operating loss for 1945 by the amount of $10,000. The respondent's further reduction of petitioner's *5 net operating loss in the amount of $250 representing the over-accrual of taxes in 1945 is not contested by the petitioner. William G. Dalin has been active in the lumber business since the age of 14. An original incorporator of the petitioner, he was engaged in the wholesale lumber business in Portland prior to the formation of the petitioner in 1929. Dalin is recognized as an expert in his special field of procuring and furnishing forest products for the railroads, railroad car shops, shipyards and similar industries. William R. Fifer has been engaged in the wholesale lumber business since 1914. In 1916, he organized his own business which he operated until 1924. From 1924 to the latter part of 1931 he served as manager of the Portland and Spokane offices of the Pendergast Company, an Ohio lumber concern. In 1932, he joined the petitioner as an officer and stockholder. Fifer's activities with the petitioner primarily involved the transportation of lumber to the retailer, an occupation known in the trade as a "Rail and Cargo man". Both Dalin and Fifer were regarded by associates in the wholesale lumber industry as unusually capable and industrious executives. During the year *6 1945, petitioner employed in its office three permanent employees, a bookkeeper, a stenographer, and an invoice clerk. It also had six exclusive sales representatives stationed in New York, Philadelphia, Chicago, St. Louis, Minneapolis, and Newark, N.J.
With the exception of approximately a week spent by Fifer in Washington, D.C., in connection with his activities as chairman of the advisory committee for the lumber industry which worked in conjunction with the O.P.A. administrator, both officers devoted all of their time to the petitioner's business during 1945. Certain abnormal conditions in the lumber industry during 1945 required petitioner's officers to devote more time and energy to the management of the business in spite of the fact that its volume of business was considerably less than in prior years. Under O.P.A. regulations in effect during 1945, the ceiling price imposed upon the wholesale lumber dealer was identical with that fixed for the sawmill operator. Late in 1944 and 1945 the military requirements for lumber were lessening and the War Production Board was gradually easing up on civilian requirements for the procurement of lumber products. As a result of the rising *7 civilian demand and the ceiling prices fixed by the O.P.A., many of the sawmill operators entered the retail phase of the business so as to make a maximum profit and many retailers acquired sawmill facilities as a ready source of supply. Although the petitioner as a wholesaler found it impossible to procure sufficient lumber during 1945 to meet the demands of all its regular customers, petitioner's officers, through greater personal effort, succeeded in obtaining enough lumber to do a fair volume of business with the railroads and car shops. Petitioner produced three witnesses at the hearing, all of whom were engaged in the wholesale lumber business, familiar with conditions existing in the industry during 1945, and personally acquainted with the qualifications and reputation of the petitioner's officers. One of these witnesses testified that the value of the services of each officer during 1945 was from $18,000 to $20,000 per annum. The other witnesses estimated the value of the services rendered by each officer in 1945 at $20,000. Respondent, on the other hand, produced no evidence bearing upon the value of their services, nor any evidence in support of his determination of salaries *8 in a lesser amount than claimed by the petitioner. [Opinion] On the basis of the facts set out herein and all the other evidence of record, this Division of the Court at the conclusion of the hearing found that $17,000 constituted a reasonable salary for each of the petitioner's two officers for the year 1945 and that the petitioner was entitled to a deduction for compensation paid to such officers in 1945 in the amount of $34,000 in computing its net operating loss for that year and its net operating loss carry-back to the year 1943. To permit a recomputation of the petitioner's tax liability for the year 1943 in accordance herewith, Decision will be entered under Rule 50. Footnotes
*. These amounts were agreed upon between petitioner and the Commissioner, following protests of and conferences with petitioner. The years 1942, 1943, and 1944 were considered together.↩